appeal on behalf of our client, Marsha Allen, in regards to the, uh, Associate Judge Hollerick in Bureau County, granting motion for summary judgment in this particular matter. Um, as the court's well aware, it's a de novo standard of review, and we feel that, uh, a close look at the facts and circumstances in this particular matter would, uh, preclude a granting a motion for summary judgment here. The principal question in this particular matter is whether or not the defendant had a duty. Uh, the court ruled and found that based upon the fact that the plaintiff had equal knowledge, as he described it, of the potential hazard, that there was no duty on the part of the defendant consistent with the premise liability act. The facts in this case are largely uncontested, but there's some important ones that I think should be brought out to the court's attention. Well, first of all, I mean, everybody's got a duty to everybody that walks in their house, right? It's a question of what the duty is, what it includes and whether there was a breach of the duty. Correct. Your honor, whether or not there's the extent of the duty. And I think part of what, what the ruling was in this particular case is you have a duty to warn individuals coming upon your premise of known hazards, uh, hazards that you know about that they may not know about. And the court here ruled that there was equal knowledge by both the plaintiff and the defendant such that such a warning in this particular case was not warranted. The defendant here had a lab, a black lab dog that he'd had for six or seven years. Uh, this was a large dog, this dog liked bones. This dog would have a propensity for picking up and dropping these bones. And that's something that conceivably the plaintiff knew that the dog dropped bones in different locations because she had been at the home on other occasions. Uh, over the previous year, she had been dating the defendant at the time and she had been in the home, but whether or not she's aware of the dog dropping the bones versus whether or not these bones constitute a hazard is where I think factually the case changes here. In this particular case, I believe that the testimony was, is that the defendant, uh, indicated when he encounters bones on the floor, he picks them up and he uh, typically leaves him, uh, said he did this because he doesn't want to fall over the bones and he had also, he had kicked bones on occasions and almost fallen over bones on different occasions. Um, and here in, we have no evidence whatsoever. The plaintiff had ever encountered these bones as a hazard other than just picking them up and putting them away as she was cleaning the house. Okay. The court also found that as a result of this knowledge of the plaintiff, the fact that she had been there before, that she had just as much, she had equal footing. She knew about this particular hazard. And as I indicated for the facts, I just solicited, I would disagree with that. Uh, it makes an assumption. It makes an assumption that she's used these bones as a hazard, that she'd had other instances where she had tripped over them, fell over them, kicked them, had close call, something along those lines. And there's simply no facts of that in the records and which were elicited from the discovery depositions of the parties in this particular matter. Don't you just have to know that if there's potential, that if you step on a bone, you'll fall? I, I think the response I would make to that Justice McDade is that, um, the defendant had that knowledge. And that's my point. He had stepped on these bones. He had had this potential before where he had almost fallen. That had never happened to the plaintiff here. She wasn't aware of, uh, at least there's no facts which indicate that she was aware that that could present a hazard. Is there something that we should know about her? Is she mentally retarded? Did she? No, Your Honor. Not that I'm aware of. Once a duty is established, um, the other arguments in the case turned upon whether or not this was an open, obvious hazard and whether or not any of the I would respectfully submit as those, whether or not the distraction exception is applicable, uh, in this particular matter or deliberate account for that matter is something that should be left for a jury to decide. As I indicated, and I'm not going to belabor the point unless the court has questions, questions, the defendant's aware of the hazard. He kicked the bones. He'd almost fallen over them. And there's no evidence whatsoever that the plaintiff had equal knowledge. And for that reason, I'm going to ask that you deny, you do not affirm the decision of the trial court in this matter. Thank you. Just read. My name is Gary and I represent the defendant. Alan Hartzell. Uh, Mr. Paparella is correct. The facts are, are undisputed. Uh, the law, I believe is undisputed on the, on the novel aspect. But what I think he overlooked is some of the key facts. Uh, Marsh Allen met Mr. Hartzell in 2006. They started dating. The accident occurred on February 6th, 2007. In that year or so time, uh, Ms. Allen stayed at the Hartzell residence 50 to 60 times. Uh, in addition to the 50 or 60 times when she stayed overnight, uh, another three or four times a month, she would come over simply to have a lunch or dinner, uh, on the occasions when she stayed overnight, she would clean the house for Mr. Hartzell when he went to work. In cleaning the house, she would pick up the bones left by the dog. The dog would leave bones all through the home. She would pick them up and remove them to the living room. She knew every idiosyncrasy of the dog. She said the dog loved to chew bones. When she moved, she took the bones with him. She, she, uh, when she, when, uh, she saw food, she would drop the bones. Um, and because she loved the dog, she brought the dog bones. She went to Walmart and bought synthetic bones. She went to Ivy foods, bought, bought, and sometimes they even had to buy bones. She went to Y and that locker and bought, uh, bought or brought dogs, bones to the dog. She is now saying she's not aware of the hazard created by, uh, these bones. Arguably she created the hazard. We will never know whether the bone she fell on was one she brought or whether one he brought, but, but how can she come to this court and argue that she's not aware of the bones? But I guess here in Zardin, she isn't in fact admitting that she knew the bones, but she's not aware of the hazard created by the bones. And judge Halloran in his ruling, I think was very good. He said, how can you on these multiple instances, pick up the bones and not appreciate the risk? But fortunately under the premises liability act, we have an objective standard, it's not really relevant what she appreciated, but what would the reasonable person under the objective standard appreciate. And I think it is difficult to her, to her, to make that argument. Uh, in addition, uh, Mr. Popper was right, right. Uh, you do not have a duty to warn if, if, uh, the invitee in this case, uh, Miss Allen had equal knowledge. How can she argue that she didn't have equal knowledge of the condition? She picked it up. She created it. Uh, it is a very difficult argument. It is also one given the fact that she's picked up the bones frequently and is the primary, uh, primarily responsible for cleaning up this home. Um, now say, uh, she, she didn't anticipate that there may be a bone there. I think the other facts are very, very important. It re immediately before the accident, the dog is laying immediately in front of her with the head around the love seat, which you see today, Mr. Hartzell, my client is on a couch perpendicular. She is eating and everything she described about the dog comes true. She's eating. The dog is in front of her with her head, head here in her testimony, the plaintiff testified when the dog saw food, she dropped the bone. Mrs. Hartzell, which Mrs. Allen, when she got up to bring your plate to the kitchen, she could have looked over the side, knowing the dog dropped them just to see if there was one there. She gets up, she walks and she said she would have seen it, but for the fact that she didn't look and she thought the plate in front of her blocked her view of the illumination was proper and had she looked, she would have seen the bone. My client who was over here has no idea that the bone is there. Now, keep in mind during the course of the evening, while they're watching Wheel of Fortune, they had gone back and forth to make the spaghetti. So they both walked back and forth from the living room to the kitchen. The bone was not there. My client had no knowledge of it. So not having knowledge, how could he have warned of a condition? He didn't know it. Lastly, he has raised today the distraction and in his brief delivered a counter exception. I can see by raising the two exceptions to the open and obvious rule that he is in fact conceding that the presence of the bone in clear view was an open and obvious condition. Now, with regard to the distraction theory, as the trial court interpreted, because there's no evidence in the court record in the depositions that there was any distraction, the distraction came up when it followed the motion for summary judgment that was in reply. But if the plate is the distraction, she created the distraction. It wasn't he didn't create the distraction. And the other thing is for the distraction theory to apply, he has to know or reasonably anticipate that she would be distracted. There'd be no reason for him to anticipate that she would be distracted by carrying a bone. There is a case, Hope versus Hope, where the mother, the daughter is at her parents' home studying and her mother is gardening and there's mud on the steps leading into the home. She tells her daughter that there is mud on the steps from her gardening and it's open and obvious. She slips on the mud and she raises the distraction theory. And the distraction was that she lost focus. She just simply lost focus because she was she was worrying about studies and finals. And the court simply said, if such mundane activities invoke the distraction exception, then you basically subsume the open and obvious doctrine. So for all these reasons, I would ask that unless the court has questions about any of this, that I would ask that this court simply affirm the trial court. Thank you. Mr. Papparella, any of the above? Your Honor, with the exception of what I submitted in my written briefs, I don't have an overbought unless the court has questions. I don't think so. Thank you. All right. Thank you both for your arguments here this morning. This matter will be taken under advice.